**HARTFORD ACCIDENT & INDEMNITY CO. v SAUER et**

Common Pleas Court, Hamilton Co.

No. A-69295. Decided Jan. 5, 1940.

Paxton & Seasongood and Evans L. DeCamp, Cincinnati, for plaintiff-appellant.

Bolsinger & Hoodin, Cincinnati, for defendants-appellees.

**OPINION**

By SCHNEIDER, J.

The above case comes into this court from the Municipal Court of the city of Cincinnati by an appeal on questions of law only.

The plaintiff in error, who was plaintiff below, is engaged in the execution of surety and fidelity bonds. In November, 1935, as a result of a bond issued on behalf of one Michael Merkel in favor of the Cincinnati Live Stock Exchange to secure the payment of the purchase price for live stock purchased by said Merkel from said exchange, the plaintiff in error and defendants in error herein entered into an agreement whereby the defendants in error indemnified plaintiff company against certain losses and expenditures made as a result of the execution of aforesaid bond.

Said Merkel died, owing the Live Stock Exchange. Following the death a representative of the Live Stock Exchange contacted the local agency of the plaintiff company and notified them of the indebtedness. The matter was referred to Paxton & Seasongood, the company attorneys.

The evidence shows that said lawyers made certain investigations and rendered services in the matter. The testimony is that this investigation and service extended over a period of approximately one and one-half months.

the value of which services is fixed at $125.

The evidence shows further that the defendants, Frank and Albert Sauer, paid the claim of the Live Stock Exchange in full without any law suits or litigation of any kind; that at no time did the defendant, Frank and Albert Sauer, refuse to pay the claim of the Live Stock Exchange.

The indemnity agreement between the parties hereto is in evidence as Exhibit "B". The provisions pertinent to the issues here are found in paragraph first as follows:

"That the undersigned will indemnify and save harmless the surety and other surety company which the surety may procure to act as surety or co-surety on said bond or undertaking, from and against any and all demands, liability, loss, cost, damage or expense of whatever nature or kind, including counsel fees, which the surety shall or may, at any time, for any cause, incur, sustain or be put to, for or by reason or in consequence of the execution of such bond or undertaking, and the undersigned will pay over, reimburse and make good to the surety all sums and amounts of money which the surety shall pay or cause to be paid or become liable to pay under such bond or undertaking, or as charges and expenses of whatever nature or kind, including counsel fees, by reason of the execution of such bond or undertaking or in connection with any litigation, investigation or other matters connected therewith, such payments to be made to the surety as soon as it shall have become liable therefor whether it shall have paid out any such sums or any part thereof or not. That in any accounting which may be had between the undersigned and the surety, the surety shall be entitled to charge for any and all disbursements in and about the matters herein contemplated made by it in good faith, under the belief that it is or was liable for the sums or amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed."

The issues were submitted to the trial court without the intervention of a jury. At the conclusion of the testimony the court delivered an opinion which appears of record. That court found, in part, as follows:

"That there was no refusal on the part of the original parties to the bond to pay, that there was merely a request to verify. That leaves the question for the court to determine as to whether or not the plaintiff company, in paying the attorneys the sum of $125 which this court does not see unreasonable from the standpoint of amount, whether or not that additional cost was necessary, and whether or not it should be assessed against the co-defendants in this case.

"It is quite apparent from the record and from all the witnesses that there was no suit to be brought by the attorneys for the plaintiff, and that there was no refusal on the part of the co-defendants to make good all the liability of Mr. Merkel.

"Therefore, the question for the court to determine is simply this: Were the services of the counsel for the plaintiff necessary and reasonable when there was no loss suffered, and I find this by a preponderance, there was no loss suffered, and the question is whether or not this additional fee should be assessed against the co-defendants."

The court then concluded that it was unreasonable for the plaintiff to consult attorneys when there had been no refusal to pay and no loss suffered, and so rendered judgment for the defendants in error.

The respective rights of the parties hereto must of course be determined by a construction of their written agreement. In the opinion of this court, the language in the agreement as quoted above is to the effect that if the surety company, acting in good faith, was under the belief that it was necessary or expedient to make certain disbursements or incur certain expenses they would be entitled to recover, even though such necessity or expediency did not exist.

The trial court determined that these expenditures were unnecessary but failed to determine whether or not the expenditures or attorney services were incurred by plaintiff in error in good faith under the belief that such expenditures or services were necessary or expedient.

For the reason stated the motion for a new trial made below should have been granted, and the cause will be remanded to the Municipal Court of Cincinnati for re-trial.